167 N.J. Super. 516 (1979)
401 A.2d 280
SPYROS PAPALEXIOU AND LOU PAPALEXIOU; CONTROL LEASING & MANAGEMENT CO., A CORPORATION OF NEW JERSEY; VENUS ENTERPRISES, INC., A CORPORATION OF NEW JERSEY; STYLIANOS IOANNIDIS AND HELEN IOANNIDIS; DONALD O. GRATHWAHL, JR.; JOHN H. WEHLAU, III; WILLIAM H. SAPIRO AND FLORENCE M. SAPIRO; LUCILLE J. McGUINN AND DOLORES I. McGUINN; WARREN L. SCHNUR AND KATHLEEN O'D SCHNUR, AND MAHESH K. KOTECHA, PLAINTIFFS,
v.
TOWER WEST CONDOMINIUM, A DULY CONSTITUTED CONDOMINIUM PURSUANT TO R.S. 46:8B-1 ET SEQ. OF THE STATE OF NEW JERSEY; TOWER WEST APARTMENTS ASSOCIATION, INC., A CORPORATION OF NEW JERSEY; TOGETHER WITH THE FOLLOWING INDIVIDUALS IN THEIR CAPACITY AS TRUSTEES OF TOWER WEST APARTMENTS ASSOCIATION, INC. AND NOT OTHERWISE INDIVIDUALLY; CLAUDIO BLANCO, A. ALFRED LANDISI, KENNETH W. THOMPSON, SERGIO FINZI, JUDITH RACKMILL, MICHAEL NEVARD, DAVID COSTA AND RENEE DENKERT; AND J.I. SOPHER & CO., INC., BELIEVED TO BE A NEW YORK CORPORATION, IN THEIR CAPACITY AS MANAGING AGENT OF TOWER WEST CONDOMINIUM, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 15, 1979.
*519 Mr. Barrett F. Kalb for plaintiffs (Messrs. Kalb, Friedman & Siegelbaum, attorneys; Mr. Marc S. Friedman on the brief).
Mr. John D. Clemen for defendants (Messrs. Shanley & Fisher, attorneys; Mr. Gerald W. Hull and Mr. John P. Beyel on the reply memorandum).
KENTZ, J.S.C.
This action was instituted by a verified complaint and an order to show cause why defendant Tower West Condominium (Tower West) should not be restrained from asserting a lien or imposing other sanctions against the condominium units of those owners who failed to pay their *520 proportionate share of a special assessment levied by Tower West.
Upon the signing of the order to show cause, temporary restraints were imposed enjoining defendants from asserting or implementing any lien or other sanctions arising out of the nonpayment of the special assessment and from taking any further affirmative action with respect thereto until the return date of the order to show cause. These restraints were thereafter continued by consent orders pending final hearing and further order of the court.
Plaintiffs are owners of apartment units in Tower West located at 6050 Boulevard East, West New York, New Jersey. Tower West is a duly constituted condominium in accordance with the laws of New Jersey, N.J.S.A. 46:8B-1 et seq. Also named as defendant is the Tower West Apartments Association (Association) which was incorporated in the State of New Jersey and created pursuant to an Offering Plan for the condominium dated June 14, 1975. Defendants Claudio Blanco, A. Alfred Landisi, Kenneth W. Thompson, Sergio Finzi, Judith Rackmill, Michael Nevard, David Costa and Renee Denkert are all members of the Association's board of trustees (board) and were elected to their positions by the unit owners as members of the Association.
Plaintiff Warren L. Schnur is also a trustee of the Association. For purposes of this action, he has elected to be designated as party plaintiff due to his opposition to the board's conduct which is the subject of this litigation. J.I. Sopher & Co. is also named as a defendant. This company served as the managing agent for Tower West and was retained by the former ad hoc board.
The majority of the board approved a special assessment of $100,000 to be levied against the unit owners due to the various conditions which in its opinion constituted an emergency within the meaning of § 12(C) of the by-laws. The board acted on authority it believed it had been granted under this section, which reads as follows:
*521 By majority vote of the Board, to adjust or increase the amount of any such assessments, and to levy and collect in addition thereto, special assessments in such amounts as the Board may deem proper, whenever the Board is of the opinion it is necessary to do so in order to meet increased operating or maintenance costs, or additional capital expenses, or because of emergencies.
However, plaintiffs claim that § 12(B) of the by-laws applies. This section provides:
Anything in these By-laws or elsewhere to the contrary notwithstanding, the Board of Trustees shall not have the authority, except in the case of an extreme emergency, without the consent of a majority of all unit owners to expend in excess of $5,000 on any item of expense in any year which is not specified in, or if specified, over the amount indicated for such item, in the aforesaid budget for such year. Such limitation shall not, however, relate to expenses which may be incurred beyond the control of the Association arising from increases of utility or fuel charges attributable to the operation of the premises.
Since no vote of the unit owners was obtained or even solicited as provided in § 12(B), plaintiffs contend that the board's assessment was beyond its authority and is invalid. Plaintiffs maintain that an extreme emergency did not exist and therefore it was necessary to obtain the vote of the unit owners. Plaintiffs seek a final determination as to the validity of the assessment prior to the imposition of a lien or other sanctions on the units of those owners, including most of the plaintiffs, who refused to pay their proportionate share of the special assessment.
Upon a consideration of the evidence adduced at trial, I find the facts to be as follows. The present membership of the board was elected to office in August 1977. Until that time an ad hoc board of trustees, of which plaintiff Schnur was president, functioned as an advisor to the then managing agent, J.I. Sopher & Co. The managing agent was empowered to make decisions concerning the operation of Tower West. The present board, unlike its predecessor, has the power to act in the name of the Association rather than merely in an advisory capacity.
*522 After assuming office the board learned of the Association's serious financial problems which were brought about by several contributing factors. Firstly, unpaid bills for 1976 had been paid from funds allocated for 1977. This depleted the 1977 budget of nearly $60,000 for expenditures made in the previous year, which should have come from that year's budget. Secondly, the Association owed $68,449.01 to vendors and suppliers. It was also indebted to the managing agent, Charles H. Greenthal & Co. (Greenthal) for its services in the sum of $4,500. In addition, the Association owed Greenthal for monies advanced on account of the Association's outstanding bills. Thirdly, the Association owed over $40,000 for fuel and electricity. Of this amount, almost $30,000 was due the Public Service Electric & Gas Company, which had sent a notice warning of discontinuance of service to the Association unless the arrearage was paid. Fourthly, in addition to its financial problems, the building was in dire need of repair. This condition had originally been discovered when Schnur, in his capacity as president of the ad hoc board, and David Costa, as a member of that board, had conducted a thorough survey of the building facilities. Their report revealed that the air conditioning, heating and fire systems needed extensive repair. The estimated cost of this work was about $21,000. A condition which required immediate attention was the weakened state of the "curtain wall" of the building. Because of this problem, about 60 units suffered water damage due to leakage whenever it rained. This condition had been deteriorating for several years, but a lack of funds had prevented earlier repairs from being made. An estimate of $11,600 for this necessary repair work had been obtained.
In order to consider these problems and to determine the course of action to be taken, the board held a meeting on September 19, 1977 which was continued to the next day. The board determined that a serious emergency existed which could not be eliminated even if all the past due maintenance charges of the members were collected. Several alternatives *523 were considered, among them a loan, an assessment, or a combination of both. The board also sought the advice of legal counsel as to the validity of an assessment under the by-laws. Its counsel advised the board by letter opinion that such an assessment was within its authority as granted by the by-laws.
After considerable discussion the board concluded that an emergency did exist within the meaning of § 12(C). Thereupon, a motion was introduced to levy an assessment of $100,000 to meet the anticipated deficit in the budget, the cash flow crisis and the need to waterproof the building.[1] Schnur opposed the motion because of his doubt that the cash flow situation constituted an emergency. The board's final action on the motion was postponed to another meeting scheduled for September 25, 1977.
At the next meeting the board continued its review of the grave financial problems. Particular attention was given to an audit completed by the accounting firm of Harris, Kerr, Forster & Co. This report confirmed the dismal financial status of the Association.[2] The possibility of Tower West's gas and electrical services being cut off due to nonpayment of the large utility bill was also given further consideration. It was decided that all overdue bills had to be paid promptly and that the repair of the leaks in the apartments must be completed. It was estimated that a little more than $100,000 was needed to accomplish this, and that this *524 amount could not be realized from the maintenance payments of the unit owners. Finally, the motion to levy an assessment of $100,000 was approved by all present except Schnur, who did not then object to the assessment but only questioned its amount. He proposed an assessment of $36,000 to cover $12,000 for emergency repair of leaks, $12,000 for an expected income deficit and $12,000 for a projected expense deficit which might eventually be even greater. Schnur maintained that this amount, together with the payment of the current and overdue maintenance fees, would enable the Association to weather the financial crisis until the beginning of the next fiscal year in January 1978.
After notice of the assessment was given to each unit owner, all but seven paid their proportionate share of the assessment. The total sum collected was nearly $90,000. The board then proceeded to authorize payment of the bills which were pending as of August 31, 1977.[3] As soon as monies were received, the board promptly began to satisfy the outstanding debts.[4]
The primary question to be decided is whether the board was authorized to levy a special assessment as provided in § 12(C) or whether it was restricted by § 12(B), as set forth in the by-laws of the Association. Before determining which *525 of the two sections is controlling here, I will first discuss the modern corporate entity known as the condominium.
Tower West was created pursuant to the New Jersey enabling statute, N.J.S.A. 46:8B-1 et seq.[5] A condominium is administered and managed by an association which may be "any entity recognized by the laws of New Jersey, including but not limited to a business corporation or nonprofit corporation." N.J.S.A. 46:8B-12. An association's power is derived from the by-laws, which are to be recorded with the master deed. N.J.S.A. 46:8B-13. The association is entrusted with "[t]he assessment and collection of funds for common expenses and the payment thereof." N.J.S.A. 46:8B-14(b). Unit owners are to be charged for the common expenses according to the "percentage of their respective undivided interests * * * as set forth in the master deed * * * or in such other proportions as may be provided in the master deed or by-laws." N.J.S.A. 46:8B-17. Each unit's proportionate share of the common expenses may be applied as a lien by the association for any unpaid assessment. Id.; N.J.S.A. 46:8B-21.
The power of a board of directors of a condominium association has been judicially considered in other jurisdictions. Century 21 Commodore Plaza, Inc. v. Commodore Plaza at Century 21 Condominium Ass'n, Inc., 340 So.2d 945 (Fla. D. Ct. App. 1976). Under consideration there was a similar Florida statute which authorized a condominium *526 association to make and collect assessments and to enforce liens against the units of those owners who did not pay their proportionate share of the assessment. Fla. Stat. Ann. § 711-15(1) (West). The appellate court upheld the trial court and reaffirmed the board of directors' power to levy a special assessment and the unit owners' liability therefor. Id. at 949.
The actions of the board of directors of a corporation must meet the test of reasonableness. This standard also applies to the actions of the governing body of a condominium. Hidden Harbour Estates v. Norman, 309 So.2d 180 (Fla. D. Ct. App. 1975). In that case a unit owner sought injunctive relief against the condominium association which had imposed a rule prohibiting the use of alcoholic beverages in the clubhouse and adjacent areas. The court reasoned that the facilities involved were common to all the unit owners and thus necessitated their relinquishing a certain degree of freedom of choice which they might otherwise enjoy with separate, privately owned property. Id. at 182. This result was necessary "to promote the health, happiness and peace of mind of the majority of the unit owners." Id. Therefore, the court held that any rule which the association adopted had to have some relation to these objectives. The rule under consideration there was found to meet those goals.
This principle was also recognized in Ryan v. Baptiste, 565 S.W.2d 196, 198 (Mo. Ct. App. 1976), where the court employed a balancing test, weighing the rights of the individual unit owners and those of the entire residential community in considering the reasonableness of the rule requiring that locks be removed from all exterior doors. Id. at 197-198. As in Hidden Harbour Estates v. Norman, supra, 309 So.2d at 182, the court cautioned that rules passed by the board must be related to the "health, happiness and enjoyment of life of the various unit owners." Ryan v. Baptiste, supra at 198. However, the court concluded that the board, which had been elected by the unit owners "to *527 oversee and protect the rights and interests of the community at large * * * was vested with considerable discretion" in the execution of its duties and responsibilities. Id. at 198.
The refusal to enforce arbitrary and capricious rules promulgated by governing boards of condominiums is simply an application of the "business judgment" rule. Henn, Law of Corporations (2 ed. 1970), § 242 at 482-483. This rule requires the presence of fraud or lack of good faith in the conduct of a corporation's internal affairs before the decisions of a board of directors can be questioned. Shlensky v. Wrigley, 95 Ill. App.2d 173, 178, 237 N.E.2d 776, 779-780 (App. Ct. 1968). If the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review. This presents an issue of law rather than of fact. Penn-Texas Corp. v. Niles-Bement-Pond Co., 34 N.J. Super. 373, 378 (Ch. Div. 1955). Although directors of a corporation have a fiduciary relationship to the shareholders, they are not expected to be incapable of error. All that is required is that persons in such positions act reasonably and in good faith in carrying out their duties. Daloisio v. Peninsula Land Co., 43 N.J. Super. 79, 89-90 (App. Div. 1957); Casson v. Bosman, 137 N.J. Eq. 532, 535 (E. & A. 1946). Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence. Sarner v. Sarner, 62 N.J. Super. 41, 60 (App. Div. 1960).
After an examination of the two sections of the by-laws which are the basis of this dispute and the facts as I have found them, I conclude that the board's conduct in levying the special assessment was within the power granted by § 12(C) of the by-laws. This section refers to the board's authority to levy and collect special assessments under certain circumstances, one of which is an emergency. It has already been established that the board considered the serious financial problems of the Association along with the sore physical *528 state of the building to constitute an emergency within the meaning of that section.
On the other hand, § 12(B) of the by-laws does not apply to assessments of the board but instead refers to expenditures. It requires the board to obtain the approval of a majority of the unit owners when it seeks to expend more than $5,000 for any expense not included in the budget or which will cost more than $5,000 for any expense not included in the budget or which will cost more than anticipated, However, if an extreme emergency exists, majority approval of the unit owners is not necessary. The board was not merely desirous of spending funds which were already in the Association's treasury to relieve the financial crisis. No such money was available in the coffers to expend. The board had to raise funds to meet this fiscal emergency for which § 12(C) was designed.
The sole basis of the board's authority for the administration and management of the condominium is the by-laws. N.J.S.A. 14A:8B-13. The power to levy a special assessment must come from the by-laws. In this instance, the board's action was clearly sanctioned by § 12(C) of the by-laws.
Absent a demonstration of the board's lack of good faith, self-dealing, dishonesty or incompetency, its determination that an emergency existed should not be judicially reviewed. The facts as I have found them refute any suggestion that the board's motives in levying the special assessment were other than a good faith effort to remedy what it considered a crisis that threatened to jeopardize the interests of all the unit owners of Tower West. In reaching that conclusion it is significant that the financial problems developed prior to the formation of the present board, and therefore it cannot be charged with trying to extricate itself from a dilemma of its own doing. Moreover, the board did not decide to impose the special assessment without first considering various alternatives. It carefully weighed the possibility of securing a loan or a partial loan before opting *529 in favor of an assessment. The board's action was the result of much deliberation. It held several meetings to consider the emergent situation and the possible solutions. Moreover, before reaching its final decision the board sought the opinion of the Association's legal counsel as to its authority to levy a special assessment. It did not wish to usurp any powers it did not rightfully possess. Clearly, the board demonstrated its good faith intent to act within the scope of its authority and to do what was necessary in the best interest of all concerned.
Furthermore, after approving the special assessment and notifying the unit owners of their obligations, the board began paying the Association's debt as soon as the money was received. From a total of almost $90,000 collected, all but $2.78 was expended for bills or set aside for necessary repairs. None of the money was spent for the benefit of the trustees personally. There is no evidence of self-dealing, fraud or dishonesty. Nor was there a breach of the board's fiduciary duty to the members. Accordingly, the board's conduct after collecting the monies from the assessment demonstrates a continuing good faith effort to promote the best interest of the unit owners.
By reason of the foregoing, the board's determination of the existence of an emergency under § 12(C) should not now be judicially reviewed.
However, assuming arguendo that § 12(B) and not § 12(C) of the by-laws applied to the board's action, the special assessment would not be invalidated. Certainly, an extreme emergency existed within the meaning of § 12(B) based on the facts as I have found them. Accordingly, the approval of the majority of the unit owners under this section was not necessary before the assessment could be levied.
Plaintiffs have made an application for counsel fees. They urge that there is a need to create a fund in court out of which attorney's fees could be paid under R. 4:42-9 (2). In order to be entitled to receive fees from such a *530 fund, an attorney "must have aided directly in creating, preserving or protecting the fund." Shilowitz v. Shilowitz, 115 N.J. Super. 165, 188 (Ch. Div. 1971). Payment of counsel fees from a fund in court is warranted when the litigants have brought the action not just for their personal interest but also for the benefit of others, thus making it unfair for them to bear the full burden of the attorney's fees. Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960).
The money which plaintiffs wish to use to create the fund was to be from the amount collected for the special assessment. As indicated, the monies received from the unit owners was used to pay overdue bills except for about $10,000, which was reserved for necessary repairs. No fund has been or will be created for which plaintiffs' counsel can be given credit. Plaintiffs had no more lofty objective in instituting this action other than to advance their own interests. They sought to have the special assessment invalidated in order to avoid payment of their share of the assessment or the imposition of a lien against their properties. Plaintiffs' application for attorney's fees is denied.
Defendants also seek an award for attorney's fees. They rely on Article XV § 1(f) of the by-laws which provides "[i]n addition to the remedies specified herein, a member shall be liable to the Association for reasonable attorney's fees incurred in enforcing the By-law, rule or regulation of the Association." There is a general rule that there may be no recovery for legal expenses in an action for breach of contract unless statute, court rule or contract provide otherwise. Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206, 212 (App. Div. 1965), aff'd 44 N.J. 450 (1965). Textileather Corp. v. American Mut. Liab. Ins. Co., 110 N.J.L. 483, 488 (E. & A. 1933). Allowing recovery pursuant to a voluntary agreement between the parties is viewed as part of "the actual, reasonable and necessary expense" of the litigant and is not within the ambit of the court rule regarding counsel fees. Cohen v. Fair Lawn Dairies, Inc., *531 supra, 86 N.J. Super. at 215. This State does not have a public policy which would prevail over the enforcement of an express contract between private parties. Alcoa Edgewater No. 1 Fed. Credit Union v. Carrol, 44 N.J. 442, 448 (1965). The by-laws of a corporation are a contract between the corporate entity and its stockholders as well as among the stockholders themselves. Faunce v. Boost Co., 15 N.J. Super. 534, 538 (Ch. Div. 1957); Leeds v. Harrison, 7 N.J. Super. 558, 570 (Ch. Div. 1950).
The by-laws for Tower West only provide for recovery of attorney's fees in a specific instance. Section 1(f) appears in Article XV, which is entitled, "Enforcement of Association By-laws, Rules & Regulations." Section 1 states that it deals with the board's authority to compel compliance with the by-laws, rules and regulations. Subsections (a) through (e) cover the board's power to take disciplinary action against a member of the Association for violation of any by-law, rule or regulation, the actions permissible to be taken and the procedures which must be followed in imposing these sanctions. Subsection (f) expressly states that it is an addition to these other remedies that are available to the Association. It holds a member liable for reasonable attorney's fees incurred by the Association when it takes legal action for alleged noncompliance with the by-laws, rules and regulations. This contemplates an action by the Association to enforce its by-laws rather than a defense of its conduct thereunder. Here the Association has been charged by some of its members with a violation of the by-laws. Article XV, § 1(f) does not provide for recovery of attorney's fees in this instance and the defendants' claim is denied.
By reason of the foregoing, the complaint is dismissed and the outstanding restraints are dissolved.
NOTES
[1] This assessment of $100,000 was based on an expected budgetary deficit of $12,000, an emergency cash flow problem of $76,000 and cost of emergency waterproofing repairs of $12,000, as recorded in the minutes of the board's meeting on September 20, 1977.
[2] The Tower West Apartments Association Financial Statement for the year ending December 31, 1977 revealed:

 Cash in the bank $57,945
 Accounts payable 40,036
 Accrued taxes & others 17,442
 _______
 Excess cash over payables $ 467

[3] As of August 31, 1977 the Association had outstanding bills owing to its suppliers totaling $68,449.01 of which:

 $20,931.94 was due Public Service Electric & Gas
 21,193.71 was due Castle Coal & Oil Co. for fuel
 1,762.25 was due Hackensack Water Co.
 5,961.43 was due in real estate taxes

[4] The funds received from the special assessment were disbursed prior to January 1978 as follows:

Net collected $89,672.01
Invoices pending as of 8/31/77 (68,449.01)
Major repairs paid (7,871.21)
Major repairs contracted for but
 but not yet paid (2,400.00)
Reserved for repairs to leaks (10,949.01)
Unaccounted for 2.78

[5] In compliance with the recording requirements contained in N.J.S.A. 46:8B-8, the Master Deed and Declaration of Restrictive and Protective Covenants creating Tower West was dated and recorded December 6, 1974 in the Hudson County Register's Office in Book 3176 for Deeds, page 1, as amended by Amended Master Deed dated August 7, 1975 and recorded August 13, 1975, in Book 3189 for Deeds, page 453, as amended by Amended Master Deed dated and recorded September 3, 1975, in Book 3190 for Deeds, page 615, as amended by Amended Master Deed, dated September 27, 1975 and recorded October 6, 1975, in Book 3192 for Deeds, page 417, and as amended by Amended Master Deed, dated and recorded September 30, 1975 in Book 3193 for Deeds, page 825.