193 N.J. Super. 494 (1984)
475 A.2d 62
LEISURETOWNE ASSOCIATION, INC., PLAINTIFF-RESPONDENT,
v.
ANNA, GRACE AND THE ESTATE OF DANIEL McCARTHY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1983.
Decided February 23, 1984.
*496 Before Judges MICHELS, KING and DREIER.
Grace McCarthy, pro se argued the cause for appellants (Grace McCarthy on the brief).
Richard L. Friedman argued the cause for respondent (Giordano, Halleran & Crahay, attorneys; Michael J. Gross of counsel; Mark S. Bellin on the brief).
The opinion of the Court was delivered by DREIER, J.A.D.
Defendants appeal from a summary judgment entered in an action brought by plaintiff, a retirement village association, to *497 foreclose a lien arising from defendants' failure to pay monthly maintenance fees. Defendants failed to appear on the return date of the motion whereupon Judge Wood in the Chancery Division granted the same and ordered that the lien be satisfied by the sale of the subject premises. Defendants have appealed and Grace McCarthy, a resident at the premises and daughter of Anna and the late Daniel McCarthy, filed a brief and argued pro se.
We note that, technically, this appeal is interlocutory, since the summary judgment order made no reference to defendants' counterclaim. The substance of the counterclaim, however, does not appear to be directed against plaintiff but rather at the builder and, since Judge Wood's disposition of plaintiff's cause of action and defenses raised thereto is severable, we will treat the notice of appeal as if it were a motion for leave to appeal and grant the same nunc pro tunc.
On August 28, 1980 Anna and Daniel McCarthy and their daughter Grace signed a contract to purchase a residence in Leisuretowne, a retirement village in Vincentown, New Jersey. The agreement called for delivery of marketable title, free of liens and encumbrances "except the covenants, conditions and restrictions set forth in the Declaration of Restrictive and Protective Covenants, the By-Laws of Leisuretowne Association, Inc. and to zoning and other restrictions of record, if any, including utility and drainage easement." Paragraph nine of the same agreement was captioned "Subscription to Membership in Leisuretowne Association, Inc.," and the buyer by that agreement subscribed to and accepted membership in plaintiff's associations "subject to the By-laws of the Association, receipt of a copy of which is hereby acknowledged." On the same date, Grace McCarthy also signed a "receipt of public offering statement and financial statements," which, in bold print, acknowledged that she had received a certified copy of the declaration of restrictive and protective covenants, as well as a *498 copy of the by-laws, rules and regulations of Leisuretowne Association.
Paragraph twenty-two of these rules and regulations specified that membership in the association was mandatory, and paragraph twenty-three specified a monthly required contribution to the common expenses of administering, maintaining and operating the association. Article four of the by-laws provided that the fees were to be considered "expenses chargeable to a member and his family unit [and] shall constitute a lien against [it] in favor of the Association [which] lien may be foreclosed in the manner provided for the foreclosure and sale of real estate mortgages."
Defendants first occupied the premises in October 1980, and four months later in February 1981 they ceased paying the $16 per month maintenance fee assessed by plaintiff. On September 28, 1981 plaintiff signed a notice of lien for the outstanding maintenance fees, amended the same on October 30, 1981 and on November 19, 1981 filed its complaint against defendants in the Burlington County Chancery Division seeking foreclosure of this lien.
Defendants filed an answer and counterclaim denying that they authorized plaintiff to represent them as residents in the community and claiming that plaintiff failed to notify them prior to their purchase about the association's powers and limitations involving defendants as residents of the community, including the provision that membership in the plaintiff association was mandatory. They do acknowledge that before they purchased the property they were informed about the existence of the association. They further claim that it was only after closing title that they received a booklet containing the applicable covenants. They further deny that the maintenance fee is payable because they are required to mow their own lawns, maintain the grounds, etc. Further they assert they utilize none of the common services such as the bus service, swimming pool, club house and the like. Defendants next allege that the *499 seller (not plaintiff) refused to honor the one-year warranty given at the time of defendants' purchase and then list several major deficiencies. Also defendants complain that plaintiff breached its own rules when it did not keep "neighborhood peace" at defendants' request, and that they have been harassed by other residents.
Defendants admit "the voluntary termination of [their] membership" in the association for the reasons stated, and allege threats, "libel and slander by allowing [plaintiff's] malicious rumor and gossip to be spread about the neighborhood." Affirmatively, defendants seek a return of all monies invested in the property initially or by way of improvements, and claim "a lien against the builder-seller and co-defendant" (although not named by defendants as a party), on the basis of misrepresentation and fraud, claiming "[p]laintiff was aware of such."
On July 14, 1982 the answer and counterclaim were amended by plaintiffs in a 14-page document restating the same allegations with a detailing of exhibits.
In August 1982 plaintiff moved for summary judgment returnable Friday, September 17, 1982 at 9:00 a.m. based upon affidavits from plaintiff's treasurer and the president of the association's board of trustees. They noted the need for the disputed fees to maintain recreation buildings, swimming pools, tennis courts, shuffleboard courts and passenger buses as well as the maintenance of a security gate and maintenance of grounds at the common recreational facilities, to provide for salary payments to employees to perform the various services and to pay for insurance premiums covering the common areas. The president of the board of trustees asserted that he has attempted to settle the dispute between the plaintiff and defendants amicably, but he has been verbally abused and insulted and thus forced to take the legal action before the court. We note that the total lien at the time of foreclosure was $320.
Unfortunately, and contrary to the rule governing appeals, R. 2:5-3, plaintiff failed to order a transcript of the summary *500 judgment hearing, but plaintiff's counsel has represented by affidavit that the hearing took place September 17, 1982. Defendants failed to appear or oppose the motion in any way and the same was granted by an order signed September 27, 1982 in which Judge Wood made the finding that there was no issue as to any material fact and that the plaintiff was entitled to $320 plus interest costs and a counsel fee of $11.20 to be satisfied from the sale of the liened premises. The sale has been stayed pending this appeal.
We have carefully considered the briefs and appendices filed by the parties and note that there is no issue of material fact raised by defendants against the plaintiff which would justify withholding foreclosure. Defendants have raised issues which might properly be asserted in a separate proceeding against the "builder-seller," but such matter is not before us. The issues of construction defects, misrepresentations, fraud, libel, slander, etc. are not directed at plaintiff but at the "builder-seller," Leisure Technology Corp., a corporate entity separate and distinct from plaintiff's Leisuretowne Association, Inc.
We recognize that it is the movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact, R. 4:46-2, and that all inferences of doubt are drawn against the moving party in favor of the opponent of the motion. "The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Defendants appear to have been adequately served with the notice of motion for summary judgment, as set forth in the certification that copies of the motion papers "were hand delivered and sent by ordinary and registered mail, return receipt requested to Daniel McCarthy, Ann McCarthy and Grace McCarthy, 35 Windsor Road, Vincentown, New Jersey 08088." Their repeated insistance on a plenary trial is ill-founded, since according to the certification, the papers were delivered to them *501 on September 2, and thus they had 15 days' notice of the summary judgment motion at which they would have been afforded the opportunity to present their claims to the court. The defenses they raised concerning plaintiff's failure to mediate disputes with their neighbors or "maintain" defendants' property arise from a misunderstanding of the duties assumed by the association. Likewise, their other claims of defects directed to the builder-seller raise no facts which would defeat plaintiff's claim for the $16 monthly maintenance fees.
Defendants lastly claim that their deed contained no mention of the restricted and protective covenants, and thus defendants cannot be bound by them. They are incorrect. The deed specifically recites that defendants received ownership of their property "subject to utility and drainage easement, zoning and building requirements of the Township of Southampton and use restrictions and covenants of record." The covenants in question were recorded by Leisure Technology Corp., the seller, on May 10, 1977, and such recording gave defendants constructive notice of the same, rendering them fully enforceable against the property owner. Olson v. Jantausch, 44 N.J. Super. 380, 388 (App.Div. 1957). Such covenants are valid and enforceable. Paulinskill Lake Ass'n, Inc. v. Emmich, 165 N.J. Super. 43, 45-46 (App.Div. 1978).
The next question concerns the method by which plaintiff has attempted to enforce its claim. Although we find no New Jersey cases which have decided the matter, foreclosure as a means of enforcing a lien of this sort has been approved by both general authority and case law in other jurisdictions. In 7 Thompson, Real Property (1962 Grimes Replacement) § 3157 at 93, the author states:
Covenants creating liens.  Promises in deeds for the grantee to perform some act may be expressly or impliedly made a lien upon the land which is subject to foreclosure on breach and which binds the land through constructive notice even in the hands of innocent purchasers.
This policy has been followed in several states. See Boyle v. Lake Forest Property Owners Ass'n, 538 F. Supp. *502 765, 769 (S.D.Ala. 1982) (acceptance of lien manifests intent to let the property stand as security for the obligation, applying state law); Bessemer v. Gersten, 381 So.2d 1344, 1349 (Fla. 1980) (reinstating a trial court's judgment of foreclosure); Brendonwood Common v. Franklin, 403 N.E.2d 1136, 1141 (Ind. App. 1980) (reversing trial court which failed to order sale of properties when it found delinquent assessment liens to be enforceable), and Kell v. Bella Vista Vil. Prop. Owners Ass'n, 258 Ark. 757, 528 S.W.2d 651, 653 (1975) (affirming judgment permitting property owners' association to foreclose on liens because of unpaid assessments); and see Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958); Rodruck v. Sand Point Maintenance Commission, 48 Wash.2d 565, 295 P.2d 714, 720 (1956), and Neponsit Property Owners' Ass'n v. Emigrant Industrial Savings Bank, 278 N.Y. 248, 15 N.E.2d 793 (1938). Thus we find ample support for and no contrary state of the law against a foreclosure action under these circumstances. We will not depart from this general rule.
We note that even at this late date we do not wish to see defendants lose their home for the small amount in difference between the parties. Although the judgment appealed from provides for the debarring and foreclosing of defendants' "equity of redemption in and to said liened premises" when the property is sold pursuant to the judgment, defendant should understand that, if they pay the disputed sum (plus applicable sheriff's fees, if any, and any other lawful costs) prior to the delivery of the sheriff's deed, the matter would be dismissed. It is therefore up to them whether they wish to preserve their equity in their home or not; but both the trial court and we will enforce the agreement that they entered into concerning the payment of monthly maintenance fees. In order to permit defendants to have sufficient time to make payments and avoid additional fees, we will continue the stay entered in the Chancery Division for an additional period of 30 days from the date *503 of this opinion, after which period plaintiff shall be free to reschedule the sheriff's foreclosure sale.
The judgment of the Chancery Division is affirmed.