226 N.J. Super. 631 (1988)
545 A.2d 243
THE COURTS AT BEACHGATE, A CONDOMINIUM, PLAINTIFF,
v.
DAVID H. BIRD, IV, AND CAROL BIRD, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided January 29, 1988.
*633 Brian J. Callaghan for plaintiff (Callaghan, D'Amico & Thompson, attorneys).
Robert E. Glaymon for defendants.
RIMM, J.T.C. (temporarily assigned).
This matter involves the enforceability of a provision in a condominium master deed relating to alterations to a condominium unit. Plaintiff, The Courts at Beachgate, a condominium association, (Beachgate) seeks a judgment against defendants, David H. Bird, IV, and Carol Bird, the owners of unit C-107, requiring them to remove and replace certain windows installed in the unit. There are no officially reported opinions in New Jersey dealing with the issue.[1]
Unit C-107 is part of The Courts at Beachgate, a condominium project established by a master deed in 1970. The project consists of various units in a number of garden-type apartment buildings. The master deed established the Association of Owners of The Courts at Beachgate. Among other things, the master deed contains the following provision:
FOURTEENTH: That each owner shall comply with the provisions of this Deed, the By-Laws, decisions and resolutions of the Association of Owners or its representative, rules and regulations, and the Regulatory Agreement, as *634 lawfully amended from time to time, and failure to comply with any such provisions, decisions or resolutions, rules and regulations shall be grounds for an action to recover sums due, for damages, or for injunctive relief.
Article VIII, Section 3.(b), Obligations of the Owners, of the By-Laws of Beachgate provides as follows:
An owner shall not make structural modifications or alterations within his unit or installations located therein without previously notifying the Association in writing, through the management agent, if any, or through the President of the Board of Directors, if no management agent is employed, and obtaining the approval of the Association. The Association shall have the obligation to answer within thirty days and failure to do so within the stipulated time shall mean that there is no objection to the proposed modification or alteration.
The by-laws constitute exhibit B to the master deed. In New Jersey, a condominium unit owner's rights are both protected and limited by the master deed and the by-laws incorporated in it. "Condominium Act," N.J.S.A. 46:8B-1 et seq. (the act), specifically N.J.S.A. 46:8B-3(m) and 9(i).
Unit C-107 had been owned by Lillian E. Bird, the mother of defendant, David S. Bird, IV. While she owned the unit, she had the existing windows removed and replaced with white vinyl replacement windows. The work was completed on April 20, 1984. Mrs. Bird died on July 18, 1984, and title to unit C-107 ultimately vested in defendants in 1985.
Plaintiff's evidence showed that the windows in the condominium complex are milled aluminum slotted-type windows whereas the windows in defendants' unit are double-hung white vinyl windows. The president of the board of directors, who became a member of the board on October 14, 1984, testified that the board became aware of windows of a different type, material and color in defendants' unit in October or November, 1984. Prior to that time Beachgate had received neither a written notification of intent to replace the existing windows in unit C-107 nor any request, oral or written, for permission to replace the windows. The witness also testified that a request from another unit owner to replace windows had been denied by Beachgate because of safety considerations. He also testified that there had been other requests for permission to make changes in units. Among them were a request to install a *635 fireplace which had been denied and a request to change electrical service which had been approved with conditions. Finally, the witness testified that, in deciding to seek injunctive relief against defendants, after requesting them to replace the windows, the board of directors of Beachgate was concerned about the following items:
1. The vinyl windows were a safety hazard in the event of fire because of distortion and fumes.
2. Double hung windows presented an escape problem in the event of fire as compared with the other windows in the complex.
3. The vinyl windows presented a maintenance problem and discolored to yellow. In this connection they also presented an esthetics problem voiding the complex's uniformity.
4. The replacement windows might subject Beachgate to liability different from that imposed on it because of the use of aluminum windows.
5. Finally, if each unit owner did as he or she wished with regard to a unit, the condominium association would lose control over the condominium complex.
On cross-examination this witness testified that there had been some changes in the uniform appearance of the complex by the installation of bars over certain windows for security purposes and by the installation of some storm doors. The evidence was, however, that installation of bars had been specifically approved by Beachgate and the installation of storm doors had apparently also been approved. Further evidence was to the effect that only one unit other than defendants' had replaced windows. This installation was approved by Beachgate, and the windows installed were the same as the original windows except for the bronze color, the original color no longer being available.
Defendant, David H. Bird, IV, testified that his mother received oral permission in December 1983 or January 1984 to *636 replace the existing windows in her unit. The permission, according to the witness, was given by Hans Horn who was the complex manager until 1985. This defendant acknowledged that no written request was made of the board of directors for permission to replace the windows; neither Mrs. Bird nor anyone on her behalf attended a board meeting to seek permission; no letter was ever received from Mr. Horn approving the installation; and Mr. Horn was supposed to have gone before the board to get approval for the new installation.
Rebuttal testimony was that the only other approval for the installation of replacement windows resulted from a letter to the board of directors written by Mr. Horn on behalf of the unit owner. This installation was only approved after the same type of aluminum windows as the original windows were to be used.
The primary basis of the defense in this matter is that defendants' predecessor in title received oral permission from the manager of the condominium complex to make the structural changes. Defendants rely on C.B. Snyder Realty Co. v. Nat. Newark & Essex Banking Co., 14 N.J. 146 (1953), from which they quote at length in their trial brief. That case iterates the rule that the principal, here the condominium association, is bound by the acts its agent, here the manager, Mr. Horn, within the apparent authority which the principal permits the agent to assume or which the principal holds out to the public as possessed by the agent. The question is whether the principal has placed the agent in such a position "that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." Id. at 154.
Defendants' position is untenable. There is not a scintilla of evidence on the basis of which defendants' predecessor in title would have been justified "in presuming" that the manager had the "authority to perform the particular act in question," that is, give permission to make a structural change in the unit. *637 Further, the by-laws specify the procedure to be followed for obtaining permission to make a structural change in a unit. If defendants' predecessor did not have actual notice of the applicable provisions, she was certainly charged with constructive notice by virtue of the recording of the master deed and the by-laws. Cf. Leisuretowne Ass'n, Inc. v. McCarthy, 193 N.J. Super. 494, 501 (App.Div. 1984).
Beyond that, the totality of the facts before the court do not support the defendants' position. On the only other occasion when windows were replaced by a unit owner, the very same manager submitted a written request to the board of directors for permission to install new windows.
The power to control structural changes must come from the by-laws. They provide the authority of a board of directors of a condominium for the administration and management of the condominium. N.J.S.A. 46:8B-13. In the present case, the by-laws specifically limit a unit owner's right to make structural changes to the unit. Similar provisions in the "Declaration" of an incorporated nonprofit homeowners' association have been considered valid. Bonner Properties, Inc. v. Franklin Tp. Plan. Bd., 185 N.J. Super. 553 (Law Div. 1982). By virtue of the court's comparison between, and discussion of, a homeowners' association and a condominium association, such restrictions are also valid in condominium by-laws. "Individual owners and residents are required to subordinate their own interests to those of the community at large." W. Smith, New Jersey Condominium Law 78 (1985), referring to Chelmsford Community Association v. Zane, 94 N.J. 523 (1983) and Leisuretown Ass'n., Inc. v. McCarthy, supra, (Foreclosure judgment entered to realize unpaid maintenance fees, court concluding that the restricting and protective covenants were binding on retirement village unit owners who had constructive notice of them.).
A condominium association has the authority to enforce provisions in the condominium's by-laws restricting structural *638 changes in the units. If the by-laws so provide, application must first be made to the board of directors of the association for permission to make such changes and approval received from the board for the changes. Condominium unit ownership involves a mode of communal living in a specifically defined community subject to express restrictions, rules and regulations. When dealing with condominium units,
[p]otential purchasers must understand that the amenities they enjoy will be shared with others and that they must abide by regulatory decisions made first by the sponsor and later by majority rule, even when they dislike them.... Therefore the prospective buyer should study the restrictions in the governing documents and study the rules and regulations governing the community carefully, and understand that they are enforceable and to be taken seriously. [W. Smith, New Jersey Condominium Law 244 (1985)].
The legislative scheme of the act is to deal with the problems of this mode of living including "the need to protect the covenant rights of all unit owners." W. Smith at 434. A board of directors of a condominium association is specifically authorized to seek injunctive relief to enforce its by-laws in accordance with N.J.S.A. 46:8B-16(b) which provides as follows:
Failure to comply with the by-laws and the rules and regulations governing the details of the use and operation of the condominium, the condominium property and the common elements in effect from time to time and with the covenants, conditions and restrictions set forth in the master deed ... shall be grounds for an action for the recovery of damages or for injunctive relief or both....
Of course, in the present case, the very terms of the master deed also provide for enforcement of provisions of the condominium documents by an action for injunctive relief.[2]
The effective intimate manner of condominium living calls for judicial recognition of the need for innovation as to applicable remedy:
A declaration of a condominium is more than a mere contract spelling out mutual rights and obligations of the parties thereto  it assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property. Stated otherwise, it spells out the true extent of the purchased, and thus granted, use interest therein. Absent consent, or an amendment of the declaration of condominium as may be *639 provided for in such declaration or as may be provided by statute in the absence of such a provision, this enjoyment and use cannot be impaired or diminished. [Pepe v. Whispering Sands Condominium Ass'n, Inc., 351 So.2d 755, 757-758 (Fla.Dist. Ct.App. 1977)].
Cf. Morrow v. Hasselman, 69 N.J. Eq. 612 (Ch. 1905) (Building restrictions in deeds are: (1) valid; (2) for the benefit of the owners of the tract; (3) "for the advantage of persons" who purchased in reliance; and (4) enforceable by injunction without "proof of special damage."); Wagenheim v. Willcox, 105 N.J. Super. 263 (Ch.Div. 1969) (A mandatory injunction issued directing removal of protruding portion of porch.).
Restrictions in a master deed are of paramount importance in defining the rights and obligations of unit owners. The injunctive relief provisions of the act should be used to enforce master deed provisions unless those provisions "are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right." Hidden Harbor Estates, Inc. v. Basso, 393 So.2d 637, 639 (Fla. Dist. Ct. App. 1981). In Ladner v. Plaza Del Prado Condominium Assoc., 423 So.2d 927 (Fla. Dist. Ct. App. 1982), the court held that unit owners had to restore terrace railings to their original condition in accordance with the condominium documents. An injunction issued in favor of the condominium association. The court found that: (1) unit owners had purchased with notice of, and subject to, the provisions of the condominium documents; (2) the documents provided in part that no unit owner would change the appearance of the exterior of the building without prior approval of the association; (3) defendants materially altered the railings of the terraces of their units without obtaining approval; and (4) the association notified the unit owners of their violations and requested compliance. See also Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. Dist. Ct. App. 1971), cert. den. 254 So.2d 789 (Fla.Sup.Ct. 1971); Annotation, "Adequacy and application guidelines relating to condominium association's requisite approval of individual unit owner's improvement or decoration," 25 A.L.R.4th 1060 (1983).
*640 There is no evidence that the covenant here sought to be enforced is arbitrary. In fact, defendants' case is devoid of any evidence concerning the covenant but concerns itself with a claim that permission for the installation made was granted. Plaintiff's case, on the other hand, dealt not only with evidence of the existence of the covenant in the master deed but also with the reasons for, and reasonableness of, the requirement. Nor can it be seriously contended that the covenant is violative of public policy or of some fundamental constitutional right. On the contrary, the act is an expression of public policy providing for condominium ownership. It recognizes the need for the orderly protection of those who accept restrictions on their mode of dwelling when they purchase a unit in a community subject to the provisions of a master deed. This protection is accomplished by requiring all who so purchase to abide by such restrictions of which they have constructive notice, if not actual notice.
Defendants also make no claim of a denial of due process or of the equal protection of the law. They purchased with knowledge of the provision set forth in a document establishing a form of ownership encouraged by legislation.
Given the authority for injunctive relief, the court must nevertheless concern itself with the propriety of the board's action in this specific case. Papalexiou v. Tower West Condominium, 167 N.J. Super. 516 (Ch.Div. 1979), sets forth the standard against which the actions of a board of directors of a condominium association are to be judged by the court. In that case a determination by the board of directors to levy an emergency assessment was attacked as beyond its authority. After discussing the modern corporate entity known as the condominium, the court said that "[t]he actions of the board of directors of a corporation must meet the test of reasonableness. This standard also applies to the actions of the governing body of a condominium." Id. at 526. The rights of an individual unit owner must be weighed against those of the entire residential *641 community, the condominium, in determining the reasonableness of the enforcement of rules by the condominium association. Actions taken by a board must be related to the "health, happiness and enjoyment of life of the various unit owners." Id. at 526. However, a board of directors of a condominium association, elected as it is, "to oversee and protect the rights and interests of the community at large," Id. at 526, 527, is vested with substantial discretion in the performance of its duties and responsibilities. The "business judgment" rule applies. The rule requires that there be a showing of fraud or lack of good faith in the conduct of the affairs of a corporation in order to question decisions of its board of directors. If the directors' actions are authorized, fraud, self-dealing or unconscionable conduct must be shown to justify judicial action. "Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence." Id. at 527.
The two-pronged test to determine if a condominium association has acted property has been set forth in Thanasoulis v. Winston Tower 200 Ass'n, Inc., 214 N.J. Super. 408, 411 (App.Div. 1986). It is "(1) whether its action was authorized by statute or its own bylaws, and, if so, (2) whether the action was fraudulent, self-dealing or unconscionable."
Defendants do not assert any claim of fraud, bad faith, self-dealing, dishonesty or incompetence on the part of the board of directors by their seeking to enforce the applicable provisions of the by-laws. Nor could they do so in good faith. In seeking to enforce the by-laws in the present case, the board of directors considered safety factors in the event of fire; maintenance and aesthetic problems; possible additional liability, and the need for control over the operation of the condominium complex. When confronted with an application for a structural change to another unit by the installation of new windows, the board investigated the availability of windows. The installation was only approved after it was determined that *642 windows differing only slightly in color from the original windows but exactly like them in all other respects were available.
Defendants' predecessor in title violated the requirements of the master deed, and the defendants continue the violation. The expense which defendants' predecessor in title incurred was self-inflicted as the result of a known and calculated risk. "An injunction, is the strong arm of equity," but one should issue in this case because it will not "`operate oppressively or contrary to the real justice of the case.'" It is here "`the fit and appropriate method of redress under all the circumstances of the case.'" Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461, 478 (App.Div. 1964), certif. den. 43 N.J. 353 (1964).
Judgment will be entered directing the defendants to remove the replacement windows in their unit and requiring them to obtain approval of the board of directors for the installation of new windows.
NOTES
[1] There is Chelmsford Condominium Association v. Zane, 94 N.J. 523 (1983), in which a petition for certification was denied. The Appellate Division opinion is the subject of an article entitled Covenants Enforcement, June 1983 Community A.Law Rep. 1. The article is fully set forth in W. Smith, New Jersey Condominium Law 433 (1985). The Appellate Division reversed a trial court denial of a mandatory injunction to enforce a provision in a master deed requiring that all floor areas in a condominium unit be covered with wall-to-wall carpeting except the kitchen area. Judgment was entered by the Appellate Division enjoining the violation of the provision and ordering defendants to install the carpeting even though they had already installed parquet flooring.
[2] Paragraph Fourteenth, Master Deed, supra.