**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3169-18T3

WILLIAM C. SLATTERY
and JILL S. SLATTERY,

     Plaintiffs-Appellants,

v.

BOARD OF TRUSTEES OF
THE POINTE AT CRYSTAL
LAKE CONDOMINIUM
OWNER'S ASSOCIATION, INC.,

     Defendant-Respondent.

_____

Submitted January 14, 2020 – Decided March 19, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000230-17.

William C. Slattery and Jill S. Slattery, appellants pro se.

Goldberg Segalla, LLP, and Stewart G. Milch (Goldberg Segalla, LLP) of the New York bar, admitted

pro hac vice, attorneys for respondent (Reshma Khanna and Stewart G. Milch, on the brief).

PER CURIAM

Plaintiffs William and Jill Slattery appeal from the February 11, 2019 order granting summary judgment to defendant Board of Trustees of The Pointe at Crystal Lake Condominium Owner's Association, Inc. (The Pointe). After a review of the contentions in light of the record and applicable principles of law, we affirm.

In 2001, plaintiffs signed a contract to purchase a condominium unit at The Pointe from the developer. The Master Deed (Master Deed I) included in the Public Offering Statement (POS) contained drawings for the particular unit, which showed an option for a deck with steps to the ground. Master Deed I was not signed or dated.

In the Notice to Purchasers, the POS advised it "IS FOR INFORMATIONAL PURPOSES ONLY" and that "PURCHASERS SHOULD ASCERTAIN FOR THEMSELVES THAT THE PROPERTY OFFERED MEETS THEIR PERSONAL REQUIREMENTS." The POS stated that the developer retained the right to amend the master deed and warned that the information and documents contained within it "may not be relied upon." The

POS informed purchasers that the "unrecorded" Master Deed I was a "sample deed . . . ."

Master Deed I was never filed with the county clerk's office. Instead, Master Deed II, dated August 1, 2000 and recorded on September 13, 2000, was the controlling deed. Although its drawings still allowed for an optional deck, they no longer depicted any steps from the deck to the ground. Any property beyond a unit's deck was deemed a common element.

Joan Carella also purchased a unit at The Pointe from the developer pre-construction. She then placed it on the market. Plaintiffs preferred the style and location of Carella's unit to the one they had contracted for. After the developer agreed to cancel plaintiffs' contract, they purchased Carella's unit.

The developer-to-Carella and Carella-to-plaintiffs closings were held back-to-back on June 21, 2001. The survey certification and release of the mortgaged property documents provided to plaintiffs at closing referred to the master deed dated August 1, 2000 and recorded on September 13, 2000. The condominium deed contained the same language regarding the recording of the master deed.

In 2006, The Pointe adopted a "RESOLUTION REGARDING EXTENSION OF DECKS." The resolution permitted unit owners to extend

3

their decks and add steps, at their own expense. The first paragraph of the resolution stated the master deed was recorded in the Essex County Clerk's office on September 9, 2000. Several unit owners sued defendant, contending the resolution was ultra vires because it authorized the modification of the common elements without the unanimous consent of all of the unit owners.

In February 2008, the court granted the unit owners' motion for summary judgment. In its written decision, the court found the resolution violated the provisions of the master deed and the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -38. At the time, William was The Pointe's president. He provided a copy of the decision to The Pointe, noting it did not intend to appeal.

In 2013, plaintiffs installed a gate on their deck and metal removeable steps from the deck to the ground. In June 2015, The Pointe's community manager advised plaintiffs by letter that they were in violation of § 9.2(b) of the master deed. Under both Master Deed I and II, § 9.2(b) states that unit owners cannot "make any structural additions, repairs, alterations or improvements . . . to the Common or Limited Common Elements . . . without the prior written approval of the Board."

In response, plaintiffs requested The Pointe grant them retroactive approval because Master Deed I allowed deck stairs. In September 2015, the

community manager informed plaintiffs that the master deed they were relying on, the unrecorded Master Deed I, was not the final recorded deed. Master Deed II, filed on September 13, 2000, was the recorded and governing master deed.

The letter stated further:

> The master deed provides that you may not alter the appearance of the deck without approval of the [Pointe]. In addition, the [Pointe] in reaching its determination took into consideration the use of the step stool as a means of exiting the deck through the gate to grade. The [Pointe] has determined that the gate is not appropriate, as it changes the appearance of the deck. Also the manner of reaching grade by the use of a step stool is not in accordance with the prevailing requirements of the building code and is not safe and exposes the Association to potential liability. The step stool also intrudes into the common elements of the Association, which is not permitted without a vote of the members as provided in the master deed.

The Pointe denied plaintiffs' request for retroactive approval and ordered the removal of the gate and the restoration of the deck to its original condition. Plaintiffs' appeal of the decision to The Pointe's Judiciary Committee was dismissed.

In August 2017, after removing the gate and steps, plaintiffs sent a letter to The Pointe requesting written approval, pursuant to § 9.2(b) of the master deed, to alter their deck by installing a gate and steps. Plaintiffs relied upon Master Deed I. In denying the request, The Pointe's counsel informed plaintiffs

5

again that their reliance on the unrecorded Master Deed I was misplaced. The letter stated "The [Pointe] can only enforce the requirements/restrictions set forth in the recorded Master Deed and ByLaws." The letter also noted the February 2008 court ruling, establishing that The Pointe did not have the authority to approve the expansion of a deck or the installation of steps from a deck onto the common elements without the unanimous approval of its members.

Plaintiffs subsequently instituted suit, seeking a declaratory judgment that (1) Master Deed II be deemed null and void; and (2) Master Deed I was the effective master deed. The complaint also sought to enjoin The Pointe from interfering with plaintiffs' use of the common elements as conveyed to them in Master Deed I.

After plaintiffs moved for summary judgment, defendants filed a cross-motion for judgment. Plaintiffs contended that the purchase of their unit from Carella was governed under the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56 (PREDFDA or the Act). The administrative regulations under the Act required the POS to include a copy of the master deed. N.J.A.C. 5:26-4.2(a)(11). Because Master Deed I was attached to the POS, plaintiffs asserted they were entitled to rely on it.

The court rejected this argument in its February 8, 2019 oral decision. It found that PREDFDA was intended to apply only to direct transactions between a developer and a purchaser. The Act did not apply to the private transaction between Carella and plaintiffs. The court explained that PREDFDA was intended to protect initial purchasers of condominiums. Because plaintiffs purchased the unit from Carella, PREDFDA and its administrative regulations were not applicable to them.

The court remarked that both plaintiffs were attorneys – William had practiced law for forty years, Jill for twenty-eight years, with a portion of her practice being real estate law. It noted that plaintiffs conceded that, at the time of the sale, no one represented that steps could or would be built off the deck prior to closing. To the contrary, plaintiffs admitted that whether steps could be added to the deck did not impact their decision to purchase the unit. And when plaintiffs walked through the property prior to the purchase, the lack of steps was not an issue.[1]

The court found that the condominium deed, survey certification, and mortgaged property release were given to plaintiffs prior to or at the time of

_____

[1] William testified during his deposition that he and Jill did not even discuss the addition of steps for several years after the closing.

A-3169-18T3

closing. These documents all referenced a master deed dated August 1, 2000 and recorded September 13, 2000.

In addition, Master Deed I provided notice that it was not the controlling master deed. The court noted Master Deed I had a number of blank spaces and unfinished attachments. It contained disclaimers stating it was not recorded and was not intended to be binding and cautioned that "the developer has retained the right to amend the master deed for various purposes set forth in the master deed." Therefore, the court found plaintiffs had record notice of Master Deed II and were on notice that Master Deed I could be changed.

The court's order of February 11, 2019 denied plaintiffs' motion for summary judgment and granted defendant's cross-motion for summary judgment.

On appeal, plaintiffs raise the same issues as they did before the trial court. They assert that Master Deed I provided that their condominium unit could have steps from the deck to the ground. Therefore, The Pointe should have granted their application to construct steps. As a result, the court erred in denying their motion for summary judgment and granting judgment to defendant.

In our de novo review of an order granting summary judgment, we apply the same standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516,

529 (2019). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). To determine whether there was a genuine issue of fact, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

We are satisfied the court properly determined that PREDFDA did not apply to plaintiffs' purchase of the unit from Carella. The statute specifically excludes private transactions from the Act's requirements. N.J.S.A. 45:22A-25(a)(1) states: "Unless the method of disposition is adopted for purposes of evasion, the provision of this act shall not apply to offers or dispositions: . . . [b]y an owner for his [or her] own account in a single or isolated transaction; . . . ." Plaintiffs bought their unit from a private owner – Carella – in a single transaction after Carella purchased the unit from the developer. Therefore, PREDFDA did not control plaintiffs' transaction.

Master Deed II was the only deed recorded with the clerk's office. Therefore, it is the controlling master deed for the condominium complex. See Shadow Lake Vill. Condo. Ass'n, Inc. v. Zampella, 238 N.J. Super. 132, 139 (App. Div. 1990) (citing Courts at Beachgate v. Bird, 226 N.J. Super. 631, 639 (Ch. Div. 1988) (holding that "[t]he provisions of a master deed are of paramount importance when defining the rights and obligations of condominium unit owners.")). Master Deed II did not contain the right to add steps to a unit and it deemed any property beyond a unit's deck to be a common element.

We are not persuaded by plaintiffs' argument that they were unaware of Master Deed II. They were provided documents at or before the closing referring to a master deed that was recorded on September 13, 2000. Master Deed I was not dated or recorded. Because Master Deed II was in their chain of title, plaintiffs had both constructive and record notice of it. See Olson v. Jantausch, 44 N.J. Super. 380, 388 (App. Div. 1957) (holding that constructive notice exists when restrictive covenants are in a buyer's chain of title).

Furthermore, plaintiffs were aware of the prior litigation when several unit owners sought to expand their decks by five feet. William was the President of The Pointe during that time. He disseminated the judicial decision, advising that The Pointe did not intend to appeal. The Resolution in contention referred

10

to the master deed recorded in the Essex County Clerk's office on September 9, 2000. Again, Master Deed II was the only recorded deed.

Plaintiffs do not assert that The Pointe did not have the authority to deny their request to modify the deck. In fact, The Pointe had that authority under either Master Deed. Instead, they contend The Pointe's denial was unreasonable because of its reliance on the wrong master deed. For the reasons already stated, it is plaintiffs who mistakenly relied on the draft unrecorded Master Deed I in supporting their modification application.

Furthermore, as this court has previously stated, if a condominium association's actions are "authorized by statute or by [its own] bylaws or master deed," and its actions are not "fraudulent, self-dealing or unconscionable," we will not interfere. Comm. for a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n, 192 N.J. 344, 369 (2007) (quoting Owners of the Manor Homes of Whittingham v. Whittingham Homeowners Ass'n, Inc., 367 N.J. Super. 314, 322 (App. Div. 2004)).

In denying plaintiffs' application, The Pointe relied on Master Deed II, which did not permit an owner to add steps to the deck of its unit and which deemed any property beyond a unit's deck to be a common element. Plaintiffs do not allege The Pointe acted fraudulently, with self-dealing or unconscionably

in denying their application to modify the deck. Therefore, plaintiffs have not demonstrated The Pointe acted unreasonably in denying their application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3169-18T3