580 A.2d 765

Alice J. LYMAN, Catherine A. Lyman, and Cletus P.
Lyman, Appellants,

v.

Tobyann BOONIN, Ruth Helen Dalton, Arnold D. Kessler,
Marvin B. Levy, Arnold Silvers, Paul M. Wapner, and the
Philadelphian Owners' Assn., Appellees.

Superior Court of Pennsylvania.

Argued June 6, 1990.

Filed Aug. 7, 1990.

Reargument Denied Oct. 19, 1990.

Richard A. Ash, Philadelphia, for appellants.

Lee Applebaum, Philadelphia, for appellees.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

CAVANAUGH, Judge:

This is an appeal from summary judgment entered in a civil action in equity brought by three non-resident owners of a condominium unit against the condominium association and individual members of its governing body, the condominium council. The action concerns the council's policy, enacted after plaintiffs' purchase of their unit, of giving priority to resident owners in the allocation of on-site parking space, which is owned as a common element and is seriously limited. Appellants also object to the alleged subsidization of parking garage and lot costs and maintenance through condominium fees paid by non-resident owners who stand little chance of ever acquiring parking spaces for their units.[1] The court below, acting on motions papers without holding a hearing, granted partial summary judgment upholding the garage policy. We affirm in part and reverse in part the grant of summary judgment and remand to the trial court for further proceedings.

1. Appellants claim that the rates charged for on-site parking are well below fair market value or even the costs associated with parking and that a portion of the fees paid by all owners must therefore be utilized to subsidize parking.

In the same action, plaintiffs sought relief from a policy recently promulgated by council which restricts council membership to resident unit owners only. The court below found that this policy violated the Pennsylvania Unit Property Act; that decision is the subject of an appeal pending at No. 2019 Philadelphia 1989 and therefore we do not address it in this memorandum.

This is an appeal from a grant of summary judgment and as such the appellate court applies the same standard of review as the trial court. Therefore, we must accept as true all well-pleaded facts in the pleadings of the non-moving party [herein plaintiff], giving the non-moving party all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. *Curry v. Estate of Thompson*, 332 Pa.Super. 364, 481 A.2d 658 (1984); *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983).

The facts alleged in the pleadings are as follows. Plaintiffs are the owners of real property consisting of a condominium, identified as Unit 16B26 in the Philadelphian, a complex located in Philadelphia's Art Museum area. All owners of units in the Philadelphian are members of an unincorporated association known as the Philadelphian Owners' Association, which is governed by a seven-member council. Defendants are resident owners who have been members of council from at least 1986 up to the present.

The Philadelphian is a high-rise structure with 776 residential units, sixteen commercial units, and amenities which include an underground garage and outdoor parking spaces. The garage holds 300 spaces and there are twenty-five outdoor spaces on Philadelphian property. In 1986, some years after plaintiffs had purchased their condominium, council adopted an Association parking policy for the allocation of on-site parking. The catalyst for adoption of the parking policy was the shortage of parking spaces for owners who wished to acquire them combined with the practice of some owners in subletting parking spaces which

they no longer needed to others without regard for the parking space waiting list maintained by Philadelphian management.

The parking policy which council adopted prohibits ad hoc subletting of parking spaces and requires that available spaces go to persons at the top of the waiting list. The policy also establishes two lists, one for resident owners and the other for non-resident owners and their tenants. As they become available, parking spaces are assigned to individuals on the resident owners' list; only when that list is exhausted are non-resident owners and their tenants eligible for a space. At the time that the policy was adopted, plaintiffs complained in writing to council that the policy was unfairly discriminatory.

After plaintiffs experienced difficulty in securing a new tenant due to the unavailability of parking, they commenced this lawsuit. Plaintiffs filed a complaint which contained three separate prayers for relief. First, plaintiffs sought to have the Association parking policy declared unlawful. As part of their claim, they asserted that the monthly rates charged for parking were well below market rates or even the costs of operating and maintaining the garage and lot.[2] Thus, resident and non-resident owners without parking are forced to subsidized parking for a group composed primarily of resident-owners[3] through payment of their monthly condo fees, which cover the costs of administration, maintenance, repair, and replacement of the common elements, including parking facilities.

Plaintiffs argued that the policy was particularly unfair with respect to non-resident owners, who paid the same monthly fees as resident owners, yet could never realistically expect to secure on-site parking for their tenants, thus reducing the value of their property and preventing them

---

**2.** The rate of sixty-five dollars monthly has not changed in nearly a decade and is at least fifty percent lower than rates charged at other residential building garages in Center City.

**3.** Some tenants who already had parking spaces at the time that the policy was adopted were "grandfathered" in and were able to keep their spaces.

from deriving any benefit from ownership of their respective interests in the parking facilities, which are owned as a common element.

Second, plaintiffs sought damages in the nature of lost rent which they attributed to the discriminatory parking policy resulting in the unavailability of parking for prospective tenants. At least one of plaintiffs' prospective tenants declined to rent the condominium based on lack of available parking. Third, plaintiffs asked that the newly adopted requirement that Council members be resident-owners be declared unlawful. The court below granted relief only with respect to the last request. It granted summary judgment, which plaintiffs now appeal, with respect to the first two demands.

This is a case of first impression in the Commonwealth. The vast majority of unit owners at the Philadelphian are residents as well. All council members are also resident-owners. Appellants argue that there is a fiduciary duty required of condominium council members to non-resident owners who are in the minority, analogous to the fiduciary duties of corporate directors. Appellants point out that all unit owners have an undivided interest in the common elements, including parking facilities, which are to be used for the benefit of all unit owners, without regard for whether they live on the premises.[4] Because unit owners with parking privileges pay less than fair rental value, owners without parking privileges (and without any realistic expectation of obtaining same) are forced to subsidize parking in addition to being denied enjoyment of their undivided interests in a common element.

Appellants refer us to a case decided by New Jersey's

---

4. Language in the condominium's Code of Regulations specifically dealing with designation of parking spaces directly supports this proposition:

 ... After all units have been sold, the Council shall have full authority to operate, manage, and use the Parking Garage for the benefit of the Unit Owners.

Section 14.01.

highest court captioned *Thanasoulis v. Winston Towers.*[5]
That case involved a garage policy established by the condo-
minium council which prevented non-resident owners from
renting parking spaces. Resident owners could rent spaces
at the rate of $25.00 per month. Tenants of non-resident
owners could rent spaces directly from the condominium
association at the rate of $75.00 per month. The New
Jersey Supreme Court held that the parking fee regulation
was beyond the power of council to adopt, reasoning that
the individual condominium owner owns his unit together
with an undivided interest in common elements such as the
garage. While the Association possessed broad discretion-
ary control over the garage, and could establish reasonable
rules and regulations concerning the size of spaces, speed
limit, and other rules to maintain safety and order, it could
not expropriate the economic value of the unit owner's
interest in parking space. *Id.*

The court also found the parking regulation invalid be-
cause it discriminated against a non-resident unit owner by
making him bear more than his proportionate share of
liability for expenses. The higher parking fee paid by
tenants of non-resident owners necessarily reduced the
charge for common elements apportioned amongst all own-
ers. *Thanasoulis,* 542 A.2d at 907.

Appellees attempt to distinguish *Thanasoulis* on two
grounds, neither of which dissuade us from the applicability
of its basic principles. First, appellees point out that there
were more parking spaces than units at Winston Towers.
Second, as part of the Towers' Governing Documents, each
unit owner was entitled to rent annually at least one park-
ing space. As appellees themselves point out, however, the
court found that this parking space represented each own-
er's proportionate undivided share of the common element
of parking facilities.

What concerned the *Thanasoulis* court was the
expropriation of a unit owner's proportionate interest in

5. 110 N.J. 650, 542 A.2d 900 (1988).

property deemed to be as a common element. We perceive that the same difficulty arises under the Philadelphian's priority system, which forecloses even the future enjoyment of undivided interests in common property held by non-resident owners. Moreover, the Philadelphian policy confers an additional benefit, *i.e.* a whole parking space representing more than each unit owner's proportionate interest in the common element, on the resident owner. This benefit works to the disadvantage of the non-resident owner, who is deprived of fair compensation for his undivided interest in the parking facilities because parking fees paid to the Association are less than fair market value. The non-resident owner is also forced to subsidize the costs of parking facilities which he cannot use through his payment of condo fees, a portion of which goes to maintain and operate the parking lot and garage, to pay taxes and utilities for these facilities, etc.

However, we do believe that *Thanasoulis* is distinguishable to the extent that it is simply not possible for the Philadelphian Owners' Association to provide parking to all owners on precisely the same basis. Therefore, after reviewing the allegations made by plaintiffs, the agreements of sale, the Declaration of Condominium, and the Code of Regulations, we conclude that council is within its powers under the Code to enact a policy which gives resident owners priority over non-resident owners in the allocation of parking spaces, *provided* that such an allocation scheme includes within it a mechanism by which all present unit owners, resident and non-resident, are compensated for the use by other owners of the garage and lot, which is owned in common by all.

Council members are charged under the Code with operating parking facilities for the benefit of unit owners without distinction as to whether they reside on the premises.[6] Council does not have the power to expropriate the property interests of some Association members for the benefit of others. However, we perceive that where it is not possible

6. *See,* Code of Regulations, Section 14.01, quoted *supra.*

for all owners to be primary users of property held as a common element, it is reasonable for council to allocate use of that common element on the basis of residency, so long as owners who cannot be primary users of the common element can at least derive economic benefit from their ownership interests in it.

Thus, the parking policy must operate in such a fashion as to compensate all owners for their respective interests in the common element, the use of which is, by necessity, restricted to a few. Such a result might be accomplished by the collection of parking fees which fairly represent the additional benefit derived by unit owners who have access to a parking space and which compensate unit owners who are unable, because of limited capacity, to realize any benefit other than a pecuniary one from their ownership interests in the common element.

Moreover, future owners must, at the very least, be given written notice of the parking policy and its ramifications prior to purchase. Such notice must, of course, be specific and unambiguous. The language appearing in Sections 14.01 and 14.02 of the Code of Regulations does not even approach that standard.

We reach this resolution based on principles of property and contract law and our interpretation of language in the Code of Regulations which directs that parking facilities be managed to benefit unit owners, without regard for whether such owners reside on the premises.

Given our resolution of this issue, a remand is necessary to determine, as a factual matter, what on-site parking fees will fairly compensate owners who do not have parking privileges for the use of their respective interests in the on-site parking facilities. We perceive that this is not a matter which can properly be resolved on summary judgment or an appeal therefrom.

Affirmed in part, reversed in part. Case remanded for further proceedings not inconsistent with this opinion. Jurisdiction is relinquished.