635 A.2d 1029

## Alice J. LYMAN, Catherine A. Lyman and Cletus P. Lyman, Appellants/Appellees,

v.

## Tobyann BOONIN, Ruth Helen Dalton, Arnold D. Kessler, Marvin B. Levy, Arnold Silvers, Paul M. Wapner and the Philadelphian Owners' Association, Appellees/Appellants.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1992.

Decided Dec. 22, 1993.

Reargument Denied Feb. 28, 1994.

Norman S. Berson, Jay Barry Harris, and Lee Applebaum, Philadelphia, for Tobyann Boonin, Ruth Helen Dalton, Arnold D. Kessler, Marvin B. Levy, Arnold Silvers, Paul M. Wapner and The Philadelphian Owners' Association, appellants.

Richard A. Ash and David R. Levy, Philadelphia, for Alice J. Lyman, Catherine A. Lyman and Cletus P. Lyman, appellants.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This appeal comes to us by virtue of our grant of cross petitions for allowance of appeal, following an Order of the Superior Court which affirmed in part and reversed in part the Order of the Court of Common Pleas, 397 Pa.Super. 543, 580 A.2d 765.

The underlying action was instituted by three non-resident owners of a condominium unit in a high-rise residential complex in Philadelphia known as the Philadelphian. The Philadelphian was originally an apartment building. However, in 1979 it was converted to a condominium complex by virtue of filing a Declaration of Condominium in accordance with the Unit Property Act, Act of July 3, 1963, P.L. 196, 68 P.S. §§ 700.101–700.805 (repealed July 2, 1980). All of the Philadelphian's unit owners are members of an unincorporated association known as the Philadelphian Owners' Association, which is governed by a seven-member council. In 1986, the council adopted a membership policy which required council members to be resident owners. The council also adopted a parking policy for the allocation of on-site parking due to the severe shortage of on-site parking.[1]

Concomitant with the new policy was the creation of two waiting lists: the first list was for resident owners, while the second list was for non-resident owners and their tenants. The lists created a priority scheme whereby resident owners would first be awarded parking spots and the second list would only come into operation after the parking requirements of all the resident owners had been satisfied. Because the parking shortage was so severe, there was no movement on the second list.

The Appellants/Appellees, Alice J. Lyman, Catherine A. Lyman and Cletus P. Lyman, were non-resident owners and as such were included on the second list. They commenced this action after they experienced difficulty securing a tenant for their unit. The difficulty was allegedly related to the unavailability of parking. Their complaint was brought in equity and contained three separate prayers for relief: first, they sought to have the parking policy declared unlawful; second, they sought damages in the nature of lost rent which they attributed to the discriminatory parking policy;[2] and

1. The Philadelphian contains 776 residential units, a 300 space underground garage, and 25 outdoor parking spaces.

2. The amount of lost rent was alleged to be $6,000.00 for a one year period.

third, they asked that the requirement that council members be resident owners be declared unlawful.

The trial court was presented with cross-motions for summary judgment. On the council's motion for summary judgment, the court upheld the garage policy, and dismissed the complaint with respect to the relief requested at counts one and two of the complaint. Concurrently, the trial court denied plaintiff's cross-motion. The trial court did, however, ultimately enjoin the council from implementing the requirement that council members be resident owners.[3]

The Lymans appealed the grant of summary judgment to the Superior Court. That court after reviewing the allegations of the respective parties, the agreements of sale, the Declaration of Condominium, and the condominium's code of regulations, held that, while the council could enact a policy giving resident owners priority over non-resident owners, the current allocation was not permissible because the non-residents were not being compensated for the use by other owners of the garage and lot which is owned in common by all. *Lyman v. Boonin,* 397 Pa.Super. 543, 580 A.2d 765 (1990). The Superior Court then remanded the matter for a determination of fair compensation. Both the Lymans and the condominium council filed petitions with this Court for allowance of appeal, which we granted. *Lyman v. Boonin,* 527 Pa. 624, 592 A.2d 45 (1991).

The Lymans argue, *inter alia,* that the Superior Court's decision permits the council to discriminate against non-resident owners, and that the policy serves to expropriate non-resident owners' percentage interest in a common element.

In response, the council argues that it is empowered under the relevant statutory authorities, as well as the condominium's governing documents, to give parking priority to resident owners without regard to compensating those who do not

---

**3.** The council appealed this latter ruling separately, and the propriety of the trial court's order as to this issue is not before us.

receive the parking. Thus, the Superior Court's order fashioning an economic remedy was erroneous.

Prior to our review of the issues presented in this case of first impression, we must briefly review the standards of review to be employed when reviewing actions of condominium associations.

When called upon to review actions of a condominium association which do not impact constitutional privileges, courts have generally employed one of two standards. The first standard is "the administrative agency analogy." Under this standard, courts have scrutinized condominium association actions in much the same way judicial review of administrative actions is conducted. Thus, to determine whether an action is reasonable, the court looks first to whether an association has acted within the scope of its authority as defined by the enabling statute, its own declaration and bylaws; and whether it has abused its discretion by promulgating arbitrary or capricious rules bearing no relation to the purpose of the condominium. Under this standard, if the rule is authorized and reasonable the association or council may adopt it; if not, then it cannot. *See Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180 (Fla.Dist.Ct.App.1975); *Ryan v. Baptiste,* 565 S.W.2d 196 (Mo.Ct.App.1978); *Holleman v. Mission Trace Homeowners Ass'n,* 556 S.W.2d 632 (Tex.Civ.App.1977).

The second standard is the "corporate analogy." Under this standard, the actions of members of a condominium council are evaluated in the same fashion as are those taken by boards of directors of corporations, to wit: whether there was a good faith exercise of business judgment. This test was employed in *Rywalt v. Writer Corp.,* 34 Colo.App. 334, 526 P.2d 316 (1974), where the court determined that the business judgment rule would insulate condominium council members if the actions are: 1) within the powers of the corporation and 2) within the exercise of an honest business judgment.

In the case of *Papalexiou v. Tower West Condominium,* 167 N.J.Super. 516, 401 A.2d 280 (1979), a New Jersey court used

this business judgment test to basically restrict condominium board challenges to those situations where there can be "a demonstration of the board's lack of good faith, self-dealing, dishonesty or incompetency." *Id.*, 167 N.J.Super. at 528, 401 A.2d at 286.[4]

Thus, under the above standard, review of association actions would only be undertaken if its actions were made in bad faith or were indicative of self-dealing or incompetency. This standard of review was ultimately adopted by New Jersey's highest court in *Siller v. Hartz Mountain Associates*, 93 N.J. 370, 461 A.2d 568, *cert denied*, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983).

Although not dispositive because it applies only to condominiums created after July 2, 1980,[5] we note that our legislature in enacting the "Uniform Condominium Act," 68 Pa.C.S. § 3101[6] provided some guidance in determining the standards to be applied in reviewing the actions of a condominium council. Therein the General Assembly set forth the following:

> The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance or other validating or invalidating cause

4. *Accord Thanasoulis v. Winston Towers 200 Ass'n, Inc.*, 110 N.J. 650, 542 A.2d 900 (1988).

5. As stated previously, the Philadelphian was established as a condominium unit in 1979 by the filing of a Declaration of Condominium pursuant to the Unit Property Act, Act of July 3, 1963, P.L. 196, 68 P.S. §§ 700.101–700.805 (repealed July 2, 1980). The Uniform Condominium Act is inapplicable in that it applies only to condominiums created within the Commonwealth after July 2, 1980.

6. Act of July 2, 1980, P.L. 286, No. 82, § 1.

supplement the provisions of this subpart except to the extent inconsistent with this subpart.

68 Pa.C.S. § 3108.

Every contract or duty governed by this subpart imposes an obligation of good faith in its performance or enforcement.

68 Pa.C.S. § 3112.

In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties ... in good faith in a manner they reasonably believe to be in the best interests of the association and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

68 Pa.C.S. § 3303(a).

From the above described standards we announce the following rule to be applied in those situations not covered by the now enacted statute: judicial relief from the actions of condominium governing bodies will be available in those situations where the action of the governing body is unauthorized, or it is established that the action has been taken fraudulently, in bad faith, or constituted self-dealing.[7]

Turning our attention to the present matter, as noted above, the Superior Court reversed the trial court's grant of summary judgment and entered a partial order of summary judgment in favor of the non-resident owners.

In evaluating a grant of summary judgment an appellate court is guided by several factors: first, summary judgment is granted only in the clearest of cases, where the right is clear and free from doubt; second, the burden is on the moving party to prove the non-existence of any genuine issue of fact; and third, all doubts as to the existence of a

7. We wish to emphasize the fact that where a governing body's action benefits its own members it is not of itself dispositive of a claim of self-dealing. To find self-dealing, there must be a demonstration of a benefit that was gained at the expense of imposing an impermissible burden on the other owners.

genuine issue of a material fact must be resolved against the moving party. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

Here, authorization for the condominium council's actions is contained in the Philadelphian's code of regulations. In Article XIV of those regulations is a section entitled "Parking Garage" which provides in relevant part:

14.01 Designation of Parking Spaces ... After all Units have been sold, the Council shall have full authority to operate, manage, and use the Parking Garage for the benefit of the Unit Owners.

14.02 Operation of Parking Garage ... Unit Owners shall not acquire any easement rights to use a particular parking space; and spaces or privileges may be assigned, reassigned or revoked by the Council or Declarant in accordance with the applicable provisions of the Governing Documents and such rules and regulations as may be promulgated for the operation of the Parking Garage.

Record at 323. Thus, the Philadelphian's code of regulations clearly provided authorization for the management of the parking facilities.[8]

The question remains however, whether the policy as passed is permissible under the standard articulated. The answer to this question is not apparent on the face of this record. Although the resident owners could validly enact a policy favoring one group of owners over another, the plaintiffs below have argued that the policy was not only facially discriminatory but placed upon them financial obligations to support the resident owners by actively subsidizing the park-

---

8. Similarly section 700.306 of the Unit Property Act, provides that "[t]he duties of council shall include ... [t]he promulgation, distribution and enforcement of rules governing the details of the use and operation of the property and the use of the common elements...." 68 P.S. § 700.306(3) (repealed July 2, 1980).

Mr. Justice Papadakos and Senior Justice Montemuro dissent and would grant reargument.

Mr. Justice Montemuro, who was an appointed Justice of the Court at the time of argument, participated in the decision of this case and the Application for Reargument in his capacity as Senior Justice.

ing garage. The imposition of such a burden could be grounds to invalidate the policy as passed. This, however, calls for factual findings by the trial court. Thus, this case was not appropriate for the entry of summary judgment. As a consequence, a remand to the trial court is necessary for the development of a factual record as to the existence or non-existence of self-dealing.

Accordingly, the Order of the Superior Court granting partial summary judgment is vacated and the matter is remanded to the trial court for proceedings consistent with this opinion.

PAPADAKOS, J., notes a dissent.

LARSEN and CAPPY, JJ., did not participate in the consideration or decision of this matter.

McDERMOTT, J., did not participate in the decision of this matter.