Henry BURGOYNE, JR., Appellant

v.

PINECREST COMMUNITY ASSOCIATION, Nora O'Malley, Benjamin Fiore, David Hurley, Timothy Slack, Charles Hays, Camco Management, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 14, 2007.

Filed May 9, 2007.

Emil F. Toften, Chalfont, for appellant.

Stefan Richter, Doylestown, for appellee.

BEFORE: LALLY–GREEN, GANTMAN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Henry Burgoyne, Jr., appeals from an order entered on August 9, 2006, in the Court of Common Pleas, Montgomery County, sustaining Appellees Pinecrest Community Association, Nora O'Malley, Benjamin Fiore, David Hurley, Timothy Slack, Charles Hays, and Camco Management's preliminary objections and dismissing with prejudice Appellant's third amended complaint. Upon review, we affirm.

¶ 2 The trial court stated the facts and procedural history as follows:

[Appellant] is an owner of a condominium in the PineCrest Community condominium development. [Appellees] are the PineCrest Community Association (the association) and the board of directors of the association (the board). Appellant appeals from [the trial court's] order dated August 1, 2006, dismissing [A]ppellant's third amended complaint with prejudice.

The first application for relief in this case occurred when [Appellees] filed preliminary objections to [A]ppellant's amended complaint. Upon reviewing those preliminary objections, along with [A]ppellant's preliminary objections to the [A]ppellees' preliminary objections, [the trial court] discovered that the pleadings were all but incomprehensible, and the complaint exhibited numerous failures to conform with the Pennsylvania Rules of Civil Procedure. By order dated October 26, 2005, [the trial court] struck all pleadings and granted [A]ppellant leave to file a second amended complaint.

Appellant's second amended complaint alleged that the board had allowed one of the other unit owners to park three commercial vehicles in the driveways of the development in violation of § 12[.1](*l*) of the condominium declaration (the declaration). Appellant also averred that the board instituted a "termination fee" chargeable to a unit owner when the owner sells the unit.

The second amended complaint sought the following relief: Unliquidated damages in the form of credits to offset future payments to the association;

An order directing the board to assure [A]ppellant that neither he nor his heirs would have to pay any "re sale fee;"

An order enjoining the board from enacting "similar resolutions" without a vote of a 75% majority of the unit owners; and

Costs and attorneys fees.

Appellees filed preliminary objections to [A]ppellant's second amended complaint. After oral argument on the preliminary objections, [the trial court] entered the order dated March 9, 2006, which dismissed [A]ppellant's causes of action with leave to file a further amended complaint alleging fraud, bad faith, or self-dealing. The same order foreclosed [A]ppellant's amended complaint from seeking relief in the forms listed above. The order did not foreclose [A]ppellant from seeking injunctive relief aimed at inducing the board to enforce the commercial vehicle rule.

Appellant filed a third amended complaint, but it failed to allege fraud, bad faith or self-dealing. By order dated August 1, 2006, [the trial court] dismissed the complaint with prejudice. The instant appeal followed.

Trial court opinion, 10/27/06, 1–2.

■ ¶ 3 The trial court ordered Appellant to file a Rule 1925(b) statement of matters complained of on appeal; he complied.[1] In response, the trial court authored a Rule 1925(a) opinion addressing Appellant's matters complained of on appeal.

¶ 4 Appellant presents the following six issues for our review:[2]

1. Whether the Lower Court erred or abused its discretion by sustaining Appellees' Preliminary Objections to

---

1. Although Appellant filed a timely Rule 1925(b) statement, we note that he failed to comply with the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Appellant's Rule 1925(b) statement includes six lengthy issues, a "brief" description of the action, and encompasses three pages. The Rule 1925(b) statement must be detailed enough so that the judge can write a Rule 1925(a) opinion, but not so lengthy that it does not meet the goal of narrowing down the issues previously raised to the few that are likely to be presented to the appellate court without giving the trial judge volumes to plow through. *Commonwealth v. Reeves*, 907 A.2d 1, 3 (Pa.Super.2006) (citation omitted). Further, Appellant failed to include a copy of his 1925(b) statement in his appellate brief in violation of Pa.R.A.P. 2111(a)(10), (d).

2. Appellant has submitted a statement of questions that encompasses six pages with one issue per page. Further, Appellant's statement lacks the brevity that this rule considers mandatory. We remind counsel that the statement of questions "must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." *See* Pa.R.A.P. 2116.

the Second Amended Complaint in paragraphs one (1) through four (4) of the Lower Court's Order dated March 9, 2005 or in section 1 of the Lower Court's Order of October 26, 2005?

2. Whether the Lower Court erred or abused its discretion under its Order of August 1, 2006 sustaining the Appellees' Preliminary Objections to the Appellant's Third Amended Complaint and Dismissing the Complaint with prejudice?

3. Whether the Lower Court, under its Order dated March 9, 2006 erred or abused its discretion in concluding that the Board of Directors of the Pinecrest Community Association, Inc., had the authority and power on its own, to amend the Declaration of Covenants, Easements, Conditions and Restrictions without a 75% vote of or other approval of the Unit Owners, in light of the "reverse priority rule" and the terms of the "Declaration" or the "UPCA"?

4. Whether the Uniform Planned Community Act ("UPCA"), 68 Pa.C.S.A. [§ ] 5101, *et seq*, effective February 2, 1997, superceded or cancelled the voting rights of the Appellant as a Unit Owner under the "Declaration" when no applicable amendment to the Pinecrest "Declaration" had ever been fully or properly enacted by the Pinecrest Board before the 1997 "UPCA" went into effect?

5. Whether the Lower Court erred or abused its discretion in dismissing the Third Amended Complaint for Declaratory Judgment and the claim for equitable relief in the absence of a claim for money damages?

6. Whether the Lower Court erred or abused its discretion in sustaining Appellee's Preliminary Objections to Appellant's claim for unliquidated money damages in the Amended Complaint filed or in the Second Amended Complaint filed?

Appellant's brief, at 7–12.[3]

■ ¶ 5 Our standard of review is as follows:

When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Lovelace v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 874 A.2d 661, 664 (Pa.Super.2005) (citation omitted). Further, this Court has noted the following with regard to review of a trial court's decision to sustain preliminary objections.

In assessing the propriety of the trial court's decision to sustain preliminary objections, we examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the plead-

---

**3.** We have reorganized Appellant's issues for ease of review.

ing would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. *Lundy v. Manchel*, 865 A.2d 850, 856 (Pa.Super.2004) (citation omitted).

■■■ ¶ 6 Appellant's first argument is that the trial court erred in sustaining Appellees' preliminary objections to Appellant's second amended complaint in paragraphs one (1) through four (4) of the trial court's order dated March 9, 2005, or in section 1 of the trial court's order of October 26, 2005.[4] Specifically, Appellant claims that the trial court erred in dismissing with prejudice his claim that the Board of Directors (Board) lacked authority to amend the Declaration[5] to allow a unit owner to park his commercial vehicle in the driveway in violation of section 12.1($l$) of article XII. Second, Appellant alleges that the trial court erred in dismissing with prejudice his claim that the Board lacked the authority to amend the Declaration to adopt a "termination fee" on the resale of units at Pinecrest. Third, Appellant alleges that the trial court erred in requiring Appellant to plead facts underlying the actions of the Board which were taken fraudulently, or in bad faith, or constituted self-dealing because neither the Declaratory Judgment Act nor the Declaration require such a finding. Fourth, Appellant alleges that he requested the minutes of the applicable meeting but they were never supplied.[6]

¶ 7 Initially, we note that Appellant mischaracterizes the above actions taken by the Board as amendments to the Declaration which require a 75% affirmative vote of the unit owners of Pinecrest. Accordingly, we must determine if the Board acted within the scope of its authority in its actions regarding the enforcement of section 12.1($l$) of article XII, and in adopting a fee on the resale of units. The Board derives its discretionary authority from several different sources. The first is article VI, section 6.1 of the Declaration.

¶ 8 Article VI, section 6.1 is stated, in pertinent part, as follows:

> **SECTION 6.1.** *The Community Association.* The Community Association is the governing body for all of the Owners. The Association shall have all of the powers of a non-profit corporation organized under the Non–Profit Corporation Law of the Commonwealth of Pennsylvania, subject only to such limitations upon the exercise of such powers as are expressly set forth in the Articles of Incorporation of the Community As-

---

4. Appellant makes an incomplete argument that Appellees' preliminary objections to his second amended complaint should not have been sustained based upon his alleged failure to comply with procedural rules. We find this argument waived for failure to develop a relevant argument but note that the trial court granted Appellant leave to file a third amended complaint. *Harris v. Toys "R" Us–Penn, Inc.*, 880 A.2d 1270, 1279 (Pa.Super.2005) (failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review).

5. The Declaration refers to the contractual document entitled: "Declaration of Covenants, Easements, Conditions and Restric-

tions." The parties to the Declaration are Pinecrest Properties, Inc., and all parties who own real property within this specific subdivision, including Appellant.

6. We find this argument waived for failure of Appellant to include it in his Rule 1925(b) statement and for his failure to develop any relevant argument pertaining to this issue. *See Forest Highlands Cmty. Ass'n v. Hammer*, 879 A.2d 223, 226 (Pa.Super.2005) (issues not raised in a 1925(b) statement will be deemed waived); *see also Harris*, 880 A.2d at 1279 (failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review).

sociation, this Declaration or the By-Laws. The Association shall have the power to do any and all lawful things which may be authorized, required or permitted to be done by the Association under its Articles of Incorporation, this Declaration and the By-Laws and to do and perform any and all acts which may be necessary or proper for or incidental to the exercise of any of the express powers of the Association. Without intent to limit the foregoing articulation, the Association shall have the right and where indicated the duty to do the following:

\* \* \*

(t) The duty to take such action, whether or not expressly authorized herein or in any other instrument as may reasonably be necessary to enforce the restrictions, limitations, covenants, affirmative obligations, conditions and other provisions of this Declaration, the By-Laws, the Association rules, any rules or regulations adopted by the Architectural Review Committee and any instrument affecting the Property Recorded prior to or simultaneously with this Declaration.

*See* Declaration article VI, section 6.1.

¶ 9 Article VI, section 6.1 gives the community association all of the powers of a non-profit corporation organized under the Non-Profit Corporation Law of the Commonwealth of Pennsylvania "subject only to such limitations upon the exercise of such powers as are *expressly* set forth in the Articles of Incorporation of the Community Association, this Declaration or the By-Laws." *See* Declaration article VI, section 6.1 (emphasis added). Further, article VI, section 6.4 gives the Board the authority to act on behalf of the Community Association. *See* Declaration article VI, section 6.4(a). Additionally, article XIV, section 14.1 gives the Board the power to enforce compliance with the provisions contained in the Declaration. *See* Declaration article XIV, section 14.1(b).

■ ¶ 10 The Board derives additional powers from the Pinecrest Community Association Bylaws. Specifically, section 7.15 which states, in pertinent part, as follows:

*Powers and Duties.* The Board of Directors shall have and exercise all lawful powers and duties necessary for the proper conduct and administration of the affairs of the Community Association and performance of the obligations of the Community Association as set forth in the Declaration, including without limitation the operation, maintenance and repair of the Common Area and may do or cause to be done all other lawful acts and things as are now by law, these By-Laws or the Declaration directed or required to be done by the Community Association. In the performance of its duties as the administering body of the Community Association, in addition to those powers and duties set forth in the Declaration, the Board of Directors shall have the powers and duties including, but not limited to, the following:

\* \* \*

(c) The duty to levy and collect, in addition to regular Assessments for common Expenses, limited charges and special assessments in amounts which the Board of Directors deems proper, whenever the Board of Directors is of the opinion it is necessary to do so in order to meet increased operating or maintenance costs, or additional capital expenses, or because of emergencies.

\* \* \*

(q) The power to make and enforce compliance with any reasonable rules and regulations relative to the operation, use and occupancy of the Property including, but not limited to, penalties to be levied for violations of these By–Laws, the Declaration and any rules and regulations which the Board of Directors shall adopt, and to amend the same from time to time as and when approved by appropriate resolutions which shall be binding on the Owners and tenants and occupants of Dwellings or Lots, their successors in title and assigns. A copy of these rules and regulations and copies of any amendments thereto shall be delivered or mailed to each Member and any tenant or occupant of a Dwelling promptly upon the adoption thereof.

\* \* \*

(z) The power to do all things incidental and necessary to the accomplishment of the above.

The duties and powers imposed on the Board of Directors by this Section 7.15 shall not be amended so as to reduce or eliminate any duties or powers of the Board of Directors without the affirmative votes of the Members entitled to vote having at least eighty percent (80%) of all votes in the Community Association.

*See* Bylaws of Pinecrest, article VII, section 7.15. Further, the Board derives its power from the Pennsylvania Uniform Planned Community Act (UPCA), which is stated, in pertinent part, as follows:

**§ 5302. Power of unit owners' association**

(a) GENERAL RULE.-Except as provided in subsection (b) and subject to the provisions of the declaration and the limitations of this subpart, the association, even if unincorporated, may:

\* \* \*

(12) Impose reasonable charges for the preparation and recording of amendments to the declaration, resale certificates required by section 5407 (relating to resales of units) which shall be one charge that may be made by the association solely because of the resale or retransfer of any unit or statement of unpaid assessments. In addition, an association may impose a capital improvement fee, but no other fees, on the resale or transfer of units in accordance with the following[.]

*See* 68 Pa.C.S.A. § 5302. Additionally, 68 Pa.C.S.A. § 5102(b) and (b.1)(1) authorize the above sections to apply retroactively to all planned communities created in this Commonwealth before the effective date of this subpart. The UPCA was approved on December 19, 1996, and became effective 45 days later on February 2, 1997. *See* 68 Pa.C.S.A. § 5102. Therefore, although Pinecrest was created in 1989, the above provisions apply retroactively to this planned community.

■ ¶ 11 Before we determine whether the Board acted within the authority given to them by the above provisions, we must determine the standard by which we evaluate the Board's actions. The trial court references our Supreme Court's decision in *Lyman v. Boonin,* 535 Pa. 397, 635 A.2d 1029 (1993), for the proposition that judicial relief from the acts of condominium governing bodies must be based upon fraud, bad faith, or self-dealing. In *Lyman,* our Supreme Court stated that "the following rule [is] to be applied in those

situations *not* covered by the now enacted statute [Uniform Condominium Act, 68 P.S. § 3101]: judicial relief from the actions of condominium governing bodies will be available in those situations where the action of the governing body is unauthorized, or it is established that the action has been taken fraudulently, in bad faith, or constituted self-dealing." *Id.*, at 103, 635 A.2d at 1032 (emphasis added). The trial court applied the *Lyman* principle to this case reasoning that, because our Supreme Court referenced 68 P.S. § 3108 of the repealed Uniform Condominium Act to establish the above rule, it should also apply under these circumstances because 68 Pa.C.S.A. § 5303 of the UPCA contains similar language.

¶ 12 Although we acknowledge that the provisions are similar, our Supreme Court stated that the above rule was applicable in situations *not* covered by the Uniform Condominium Act. *See Lyman*, at 103, 635 A.2d at 1032 (emphasis added). In this case, as we noted previously, Pinecrest *is* covered by the now enacted statute, the UPCA. Accordingly, we decline to apply *Lyman* to these circumstances.

■ ¶ 13 In contrast, we find 68 Pa. C.S.A. § 5303 to govern the standard with which we review decisions made by the Board. This section is stated, in pertinent part, as follows:

**§ 5303. Executive board members and officers**

(a) POWERS AND FIDUCIARY STATUS.—Except as provided in the declaration, in the bylaws, in subsection (b) or in other provisions of this subpart, the executive board may act in all instances on behalf of the association. In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith; in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances. [ ... ].

68 Pa.C.S.A. § 5303. Therefore, we review the actions of the Board to determine if they acted "in good faith; in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances." *See* 68 Pa.C.S.A. § 5303.[7]

■ ¶ 14 We find that the Board's actions were within the scope of power afforded to them by the Declaration, the Pinecrest Bylaws, and the UPCA. Specifi-

---

7. Appellant argues that, although the trial court granted him leave to file an amended complaint, it erred in requiring Appellant to plead facts establishing that the Board acted fraudulently, in bad faith, or in a manner that constituted self-dealing. Even though we have established that the trial court should have evaluated the Board's decision with regard to 68 Pa.C.S.A. § 5303, instead of the business judgment rule applied in *Lyman*, we find no error in the trial court's requirement that Appellant plead facts underlying the above standard because it is substantially similar to that embodied in 68 Pa.C.S.A. § 5303. *See* Pa.R.C.P. 1019(a) (requiring pleader to disclose the "material facts" sufficient to enable the adverse party to prepare his case). Either standard would require Appellant to plead facts that establish that the Board acted in bad faith or in a manner that is not in the best interest of the association when *making* its discretionary decisions. Further, we note that Appellant chose to ignore the trial court's directive to plead facts underlying the above standard which inevitably led to the dismissal of his complaints.

cally, article VI, section 6.1(t) of the Declaration gives the Association the "duty to take such action, whether or not expressly authorized herein or in any other instrument as may reasonably be necessary to enforce the restrictions, limitations, covenants, affirmative obligations, conditions and other provisions of this Declaration, the By–Laws, the Association rules...." Additionally, section 7.15 of the Pinecrest Bylaws gives the Board the authority to "have and exercise all lawful powers and duties necessary for the proper conduct and administration of the affairs of the Community Association and performance of the obligations of the Community Association as set forth in the Declaration...." Among the powers given to the Board is the "power to make and enforce compliance with any reasonable rules and regulations relative to the operation, use and occupancy of the Property including, but not limited to, penalties to be levied for violations of these By–Laws, the Declaration and any rules and regulations which the Board of Directors shall adopt...." *See* Declaration article VII, section 7.15(q).

¶ 15 Our review of the Declaration, the Pinecrest Bylaws, and the UPCA did not reveal any provisions making enforcement of regulation compliance mandatory, nor did it reveal any limitation on the power of the Board to impose a capital improvement fee on the resale of units. *See* Declaration article VI, section 6.1 (authority subject only to limitations upon the exercise of such powers as are expressly set forth in the Articles of Incorporation, Declaration, or Bylaws). In fact, the above mentioned provisions give the Board the discretionary authority to make and enforce compliance with regulations and the authority to impose a capital improvement fee on the resale or transfer of units. *See* Declaration article VI, section 6.1(t), Pinecrest Bylaws section 7.15(q), and 68 Pa.C.S.A. § 5302(12).

∎ ¶ 16 Appellant alleges that because article X, section 10.7 of the Declaration is in direct conflict with 68 Pa.C.S.A. § 5302(12), the terms of the Declaration control pursuant to the "reverse priority rule" embodied in 68 Pa.C.S.A. § 5102(b). Essentially, this provision provides that, if the retroactive application of a provision of the UPCA would invalidate a provision of the previously enacted Declaration, then the provision in the Declaration controls. We find that the "reverse priority rule" is not applicable because article X, section 10.7 of the Declaration is not in conflict with the UPCA. Article X, section 10.7 addresses the assessment of a onetime nonrefundable contribution to the association from a unit owner at the time of closing of the purchase of the unit. In contrast, 68 Pa.C.S.A. § 5302(12) addresses the association's authority to impose a capital improvement fee on the resale or transfer of units. We find no conflict between these two provisions, and, accordingly, the "reverse priority rule" is not applicable.

¶ 17 Therefore, we find that the Board acted in accordance with the standards embodied in 68 Pa.C.S.A. § 5302, in its enforcement of article XII, section 12.1(*l*) and in its decision to impose a capital improvement fee on the resale of units. Accordingly, we find that the trial court did not err in sustaining Appellees' preliminary objections to Appellant's second amended complaint in paragraphs one (1) through four (4) of the trial court's order dated March 9, 2005, or in section 1 of the trial court's order of October 26, 2005. *Lovelace,* 874 A.2d at 664. Therefore, Appellant's first argument fails.

∎ ¶ 18 We address Appellant's second, third, and fourth arguments together as they all pertain to his question of the authority of the Board to amend the Dec-

laration without a 75% approval vote of the unit owners. As noted above, we find that Appellant mischaracterizes the actions of the Board as amendments to the Declaration. In fact, as we discussed at length above, the challenged actions are within the scope of the Board's authority as granted by the Declaration, the Pinecrest Bylaws, and the UPCA. Accordingly, we find Appellant's second, third, and fourth arguments fail.

¶ 19 Appellant's fifth argument is that the trial court erred or abused its discretion in dismissing the third amended complaint for declaratory judgment and the claim for equitable relief in the absence of a claim for money damages. Because we have found that Appellant is not entitled to relief on the claims presented for our review, we find that his claim for equitable relief fails. Finally, Appellant alleges that the trial court erred in sustaining Appel-

lees' preliminary objections to Appellant's claim for unliquidated money damages. Again, we find this claim fails because Appellant is not entitled to relief on any of his claims. Because the law would not permit recovery by Appellant based upon the facts averred, dismissal of his compliant was appropriate. *Lovelace,* 874 A.2d at 664.

¶ 20 As Appellant's claims fail, we affirm the trial court's August 9, 2006 order sustaining Appellees' preliminary objections, and dismissing Appellant's third amended complaint with prejudice.

¶ 21 Order affirmed.